**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>    Plaintiff,<br><br>v.<br><br>Davit Gasparyan a/k/a David Gasparyan,<br><br>    Defendant. | **Case No. 2: 16-cv-2725**-PSG |

**[Proposed] Stipulated Final Judgment and Order**

The Consumer Financial Protection Bureau (Bureau) filed this civil action on April 21, 2016, to obtain injunctive relief, restitution, civil money penalties, and other equitable relief against Davit Gasparyan, a/k/a David Gasparyan (Defendant) (together, the Parties). The First Amended Complaint (Complaint) alleges violations of §§ 1031 and 1036 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5536(a)(3), 5564, 5565, in connection with Defendant's alleged substantial assistance to D and D Marketing, Inc., d/b/a T3Leads (T3), which receives and has received consumer information (called "Leads") from Lead Generators that market payday and installment loans and conveys and has conveyed those Leads to lenders and other Lead recipients.

1

The Parties agree to the entry of this Stipulated Final Judgment and Order (Order).

**THEREFORE, it is ORDERED:**

**Findings and Conclusions**

1.    This Court has jurisdiction over the Parties and the subject matter of this action.

2.    The Parties agree to entry of this Order, without further adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint to the date of this Order.

3.    Defendant neither admits nor denies any allegations in the Complaint, except as specifically stated in this Order. For purposes of this Order, Defendant admits the facts necessary to establish the Court's jurisdiction over Defendant and the subject matter of this action.

4.    Defendant waives any claim he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.

5.    Each Party will bear its own costs and expenses, including, without limitation, attorneys' fees.

6.    The Parties agree that: (a) this Order contains the complete agreement between the Parties; (b) no promises, representations, or warranties other than what

is contained in this Order have been made by the Parties; and (c) this Order supersedes any prior oral or written communications, discussions, or understandings.

7.  Entry of this Order is in the public interest.

**Definitions**

8.  "Defendant" means Davit Gasparyan, a/k/a David Gasparyan.

9.  "Effective Date" means the date this Order is entered.

10.  "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

11.  "Lead" is a consumer's personal information received, transmitted, or otherwise used in connection with a consumer financial product or service.

12.  "Lead Aggregators" are Persons that obtain Leads and convey that information to other Persons. "Lead Aggregation" is the practice of acting as a Lead Aggregator.

13.  "Lead Generators" are Persons that obtain Leads and transmit the Leads to Lead Aggregators or to other Persons. Lead Generation is the practice of acting as a Lead Generator.

14.  "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

15.   "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendant based on substantially the same facts as described in the Complaint.

**Relief Ordered**

**A.   Conduct Relief**

16.   In connection with Lead Generation or Lead Aggregation, Defendant, either directly or through his agents, servants, or employees, or through any entity in which he has or obtains a financial interest, including joint ventures, is permanently enjoined from:

      a.   knowingly or recklessly receiving Leads from Lead Generators whose consumer-facing content includes misleading, inaccurate, or false statements;

      b.   generating Leads through any means that involve misleading, inaccurate, or false statements; and

      c.   transmitting Leads that are not vetted in compliance with this Order.

17.   In connection with Lead Generation and Lead Aggregation, Defendant, either directly or through his agents, servants, or employees, and all

1 entities in which he has or obtains a financial interest, including joint ventures,

2 must:

3     a.    undertake reasonable efforts to ensure that Leads conveyed to

4     recipients do not result in consumer loans that are void in whole

5     or in part under the laws of the consumer's state of residence

6     provided in the consumer's loan documents based on state-

7     licensing requirements or interest-rate limits;

8     b.    obtain and preserve information about any end user of its Leads

9     sufficient to ensure compliance with this paragraph (No. 17),

10     including but not limited to copies of all licenses required by

11     each state in which the recipient does business where the

12     absence of such a license would render a loan void in whole or

13     in part under the laws of that state;

14     c.    create and implement a process for reviewing loans resulting

15     from Leads conveyed by Defendant to reasonably ensure

16     compliance with this paragraph (No. 17) and with federal and

17     state privacy laws;

18     d.    establish a policy that prohibits lenders to which it conveys

19     Leads, directly or indirectly, from making consumer loans that

20     are void in whole or in part under the laws of the consumer's

21

state of residence provided in the consumer's loan documents

based on state-licensing requirements or interest-rate limits;

e. refrain from conveying Leads where Defendant knows or

reasonably believes that the Leads are likely to result in

consumer loans that are void in whole or in part under the laws

of the consumer's state of residence provided in the consumer's

loan documents based on state-licensing requirements or

interest-rate limits;

f. reasonably review consumer-facing content of all Lead

Generators from which Defendant accepts Leads to reasonably

ensure that it does not contain misleading, inaccurate, or false

statements; and

g. require all Lead Generators from which Defendant accepts

Leads to prominently disclose to consumers an accurate

description of how Defendant will receive, convey, and process

Leads.

For purposes of this paragraph (No. 17) and its subparts, no Person may take into

consideration any contention that state or federal law is inapplicable, or that

lenders are not subject to state or federal law, because of lender sovereignty or a

lender's foreign, off-shore, or tribal status or affiliation, or because of choice of

foreign or tribal law.

**B.     Civil Money Penalty**

18.     Under §1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the

violations of law described in the Complaint, and taking into account the factors in

12 U.S.C. § 5565(c)(3), Defendant must pay a civil money penalty in the amount

of $250,000 to the Bureau.

19.     Within 10 days of the Effective Date, Defendant must pay the civil

money penalty by wire transfer to the Bureau or to the Bureau's agent in

compliance with the Bureau's wiring instructions.

20.     The civil money penalty paid under this Order will be deposited in the

Civil Penalty Fund of the Bureau as required by §1017(d) of the CFPA, 12 U.S.C.

§ 5497(d).

21.     Defendant must treat the civil money penalty paid under this Order as

a penalty paid to the government for all purposes. Regardless of how the Bureau

ultimately uses those funds, Defendant may not:

        a.      claim, assert, or apply for a tax deduction, tax credit, or any

                other tax benefit for any civil money penalty paid under this

                Order; or

b.    seek or accept, directly or indirectly, reimbursement or

indemnification from any source, including but not limited to

payment made under any insurance policy, with regard to any

civil money penalty paid under this Order.

22.    To preserve the deterrent effect of the civil money penalty, in any

Related Consumer Action, Defendant may not argue that it is entitled to, nor may

Defendant benefit from, any offset or reduction of any compensatory monetary

remedies imposed in the Related Consumer Action because of the civil money

penalty paid in this action or because of any payment that the Bureau makes from

the Civil Penalty Fund (Penalty Offset). If the court in any Related Consumer

Action grants a Penalty Offset, Defendant must, within 30 days after entry of a

final order granting the Penalty Offset, notify the Bureau, and pay the amount of

the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an

additional civil money penalty and will not change the amount of the civil money

penalty imposed in this action.

**C.    Default or Delinquency**

23.    In the event of any default on Defendant's obligations to make

payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended,

will accrue on any outstanding amount not paid from the date of default to the date

of payment, and will immediately become due and payable.

24.     Under 31 U.S.C. § 7701, Defendant, unless he has already done so, must furnish to the Bureau his taxpayer-identifying number, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

**D.     Reporting Requirements**

25.     For 5 years from the Effective Date, Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including Defendant's ownership of, direct or indirect control of, or employment with an entity involved in Lead Generation or Lead Aggregation related to consumer loans where the APR exceeds 36% (excluding (a) loans extended solely to finance the purchase of a vehicle or other consumer good in which the good secures the loan; (b) home mortgages and other loans secured by real property or a dwelling if recorded or perfected; (c) credit cards; (d) student loans; (e) non-recourse pawn loans; and (f) overdraft services and lines of credit), or that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendant; or a change in Defendant's name or address. Defendant must provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

26.     Within 7 days of the Effective Date, Defendant must:

a. designate and provide to the Bureau at least one telephone number and an email, physical, and postal address as points of contact that the Bureau may use to communicate with Defendant;

b. identify in writing to the Bureau by name, telephone number, and physical, postal, email, and Internet addresses, all businesses of which Defendant is the majority owner or that Defendant directly or indirectly controls that engage in Lead Generation or Lead Aggregation relating to consumer lending;

c. describe in writing to the Bureau the activities of each business identified in response to paragraph 26.b, including the products and services offered and the means of advertising, marketing, and selling; and

d. Defendant must report any change in the information required to be submitted under paragraph 25 at least 30 days before the change or as soon as practicable after the learning about the change, whichever is sooner.

27. Within 30 days of the Effective Date, Defendant must:

a. identify Defendant's telephone numbers and all email, Internet, physical, and postal addresses, including all residences;

b. describe in detail Defendant's involvement in every business

for which he performs services in any capacity or that he

wholly or partially owns, including Defendant's title, role,

responsibilities, participation, authority, control, and ownership.

28. Within 120 days of the Effective Date, and again one year after the

Effective Date, Defendant must submit to the Enforcement Director an accurate

written compliance-progress report (Compliance Report), that, at a minimum:

a. describes in detail Defendant's compliance with this Order; and

b. attaches a copy of each Order Acknowledgment obtained under

Section E of this Order, unless previously submitted to the

Bureau.

29. After the one-year period, and for 4 years thereafter, Defendant must

submit to the Enforcement Director additional Compliance Reports within 14 days

of receiving a written request from the Bureau.

30. Within 30 days of the entry of a final judgment, consent order, or

settlement in a Related Consumer Action, Defendant must notify the Enforcement

Director of the final judgment, consent order, or settlement in writing. That

notification must indicate the amount of redress, if any, that Defendant paid or is

required to pay to consumers and describe the consumers or classes of consumers

to whom that redress has been or will be paid.

31.     Should Defendant seek to transfer or assign all or part of his

ownership of any business of which he is the majority owner or that he directly or

indirectly controls that engages in Lead Generation or Lead Aggregation relating to

consumer lending, Defendant must, as a condition of transfer or assignment, obtain

the written agreement of the transferee or assignee to comply with all applicable

provisions of this Order.

**E.     Order Distribution and Acknowledgement**

32.     Within 7 days of the Effective Date, Defendant must submit to the

Enforcement Director an acknowledgment of receipt of this Order, sworn under

penalty of perjury.

33.     Within 30 days of the Effective Date, Defendant, for any businesses

of which he is the majority owner or that he directly or indirectly controls that

engage in Lead Generation or Lead Aggregation relating to consumer lending,

must deliver a copy of this Order to any Persons with responsibilities related to the

injunctive relief described in this Order.

34.     For 5 years from the Effective Date, Defendant, for any business of

which he is the majority owner or that he directly or indirectly controls that engage

in Lead Generation or Lead Aggregation relating to consumer lending, must

deliver a copy of this Order to any business entity resulting from any change in

structure referred to in Section D, any future board members and executive

officers, as well as to any Persons who will have responsibilities related to the

injunctive relief described in this Order before they assume their responsibilities.

35.	Defendant must secure a signed and dated statement acknowledging

receipt of a copy of this Order, ensuring that any electronic signatures comply with

the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of

delivery of the Order, from all Persons receiving a copy of this Order under this

Section.

**F.	Recordkeeping**

36.	Defendant must create and retain or, if already created, must retain,

for at least 5 years from the Effective Date, for any business of which Defendant is

the majority owner or that he directly or indirectly controls that engages in Lead

Generation or Lead Aggregation relating to consumer lending, all documents,

records, and data necessary to demonstrate full compliance with each provision of

this Order.

37.	Defendant must make the documents identified in paragraph 36

available to the Bureau upon the Bureau's request.

**G.	Notices**

38.	Unless otherwise directed in writing by the Bureau, Defendant must

provide all submissions, requests, communications, or other documents relating to

this Order in writing, with the subject line, "*Consumer Financial Protection*

1   *Bureau v. Davit Gasparyan, a/k/a David Gasparyan*, File No. 2013-0574-02" and

2   send them either:

3         a.     by overnight courier (not the U.S. Postal Service) to:

4                Assistant Director for Enforcement
               Consumer Financial Protection Bureau

5                ATTENTION: Office of Enforcement
               1625 Eye Street, N.W.

6                Washington D.C. 20006; or

7         b.     by first-class mail to the below address and contemporaneously

8                by email to Enforcement_Compliance@cfpb.gov:

9                Assistant Director for Enforcement
               Consumer Financial Protection Bureau

10               ATTENTION: Office of Enforcement
              1700 G Street, N.W.

11               Washington D.C. 20552

12   **H.    Cooperation with the Bureau**

13       39.    Defendant must cooperate fully with the Bureau in this matter,

14   including in those cases consolidated with this matter for pretrial purposes, and in

15   any investigation related to or associated with the conduct described in the

16   Complaint. Defendant must provide truthful and complete information, evidence,

17   and testimony. Defendant must appear for interviews, discovery, hearings, trials,

18   and any other proceedings that the Bureau may reasonably request upon 10 days

19   written notice, or other reasonable notice, at such places and times as the Bureau

20   may designate, without the service of compulsory process.

21

## I.      Compliance Monitoring

40.     For purposes of compliance monitoring, the Bureau may communicate directly with Defendant, unless Defendant retains counsel related to these communications.

41.     Defendant must permit Bureau representatives to interview any employee or other Person affiliated with Defendant who has agreed to such an interview. The Person interviewed may have counsel present.

42.      Nothing in this Order limits the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or other compulsory process.

## J.      Release

43.     The Bureau releases and discharges Defendant from all potential liability for law violations that the Bureau has or might have asserted based on the practices alleged in the Complaint, to the extent such practices occurred before the Effective Date and the Bureau knows about them as of the Effective Date. The Bureau may use the practices alleged in the Complaint in future enforcement actions against Defendant or his affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Order, or to seek penalties for any violations of the Order.

**K.    Retention of Jurisdiction**

44.    The Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**It is SO ORDERED.**

DATED this  8th day of September_____, 2017.

PHILIP S. GUTIERREZ
_____
United States District Judge